Absolutely, you're arguing for a Justicam, correct, for Newegg, all right. Let me proceed. May it please the court. The Justicam filed this frivolous lawsuit against 59 defendants, not with hopes of winning the case, but solely in order to collect a nuisance value settlement. Its theory of infringement never made any sense, but it certainly made no sense to continue after its theory was explicitly rejected. Nonetheless, the Justicam persisted in trying to coerce a cost of litigation settlement. It did actually get 20 other defendants to pony up very small amounts, almost all in the low to mid five figures. Only as it was about to lose on summary judgment, did it abandon its case against Newegg without any payment or settlement. How close was that abandonment to summary judgment, to the actual? You had those hearings settled for summary judgment? No, Your Honor, we were just about to start briefing. We've completed expert testimony, and we were about to start briefing on the summary judgment issue. It was after the Markman hearing, and then after the Markman hearing, there was still a round of expert testimony. Was there a hearing scheduled on the summary judgment? Not at that time, Your Honor. Okay. So I'm concerned about this case for the following reason, and I'm saying this to both counsels so that you can kind of help me get to the core. My concern, at least. And that is that we have a situation here that I, let's say that I would find exceptional. Okay. But yet I'm faced with this, with a very rigorous standard of review. I want you to address that, and how would we get past this abuse of discretion standard that we're faced with? Your Honor, so leaving aside the merits, of course, which I'm happy to talk about, I think the answer in this case is that what the district court did on remand from this court's first opinion was rather remarkable. Judge Gilstrap, a new judge below, was ordered to reconsider the facts under Octane, under the new standard, and he didn't do so. He refused to second-guess Judge Davis's old conclusions made under the old, now overruled legal standard. He afforded no weight to this court's opinion remanding the case, even though this court went out of its way to indicate it saw significant merit in the frivolousness claim. I think that was not only an abuse of discretion, I think it was a refusal even to exercise discretion. Judge Gilstrap didn't conduct his own evaluation of the facts. He block-quoted and cited Judge Davis's previous determinations. And he did that because he wrongly suggested no less than four times that Judge Davis had engaged in, quote, in-person evaluations of the evidence from his unique posture of having lived with these cases in the parties. Now that, in fact, turned out to be untrue. Judge Davis had no substantive involvement in the case until the first fees motion. It was Magistrate Judge Love who decided the Markman hearing. Judge Davis's only interaction with the parties was a single one-paragraph affirmance of Judge Love. But Judge Davis adopted Judge Love's findings, correct? He did, Your Honor. That's correct. But I think what Judge Gilstrap did, which was to say, I'm not going to go back and look at these facts on the merits on my own because I'm going to trust Judge Davis. Judge Davis lived with this case for years and dealt with the parties. That factual premise was untrue. And I think even if it seems to ignore our mandate from our prior decision where we said, look at this again. I think it does, Your Honor. I mean, my concern is even if we find that and send it back, isn't he just going to do that finally and find, you know, not exceptional and it's going to come back up here on an abuse of discretion and we're not going to find an abuse of discretion? Well, Your Honor, I guess I would suggest this court has the evidence before it that it can conclude that this case is frivolous, that it was litigated in bad faith, that it justifies an award of fees. Judge Gilstrap had an opportunity to apply octane fitness. He did not, in fact, go back and make fact findings. Well, if we reverse, what choice would he have? Well, I think, Your Honor, that that's precisely what you should do. You should reverse and say that an award of fees is appropriate. It would then be up to him to set the amount of the fees. I understood Judge Hughes' question to be if we just say, please now go back and try again to make findings, that he might. But this is my problem with, you know, the new standards, because not that I have a problem with the new standards, but what we do with this case, because even if we all agree that it was clear error to find post-claim construction, that there was any reasonable position here, even if that's a baseline, that their post-claim construction conduct was unreasonable, that alone doesn't entitle you to an award of the fees. After octane fitness, the district courts get large discretion to look at the case and say, does this stand out from all the others? And so I don't understand how we could look at this and say, even if we agree with you that there's no reasonable basis for this litigation after claim construction, that it's our job to look at the whole thing and decide whether fees are warranted, that it stands out from the others. And it still seems like it needs to go back. Well, Your Honor, I think it's absolutely right that the octane standard gives wide discretion to the district court. But I do think that that comes with an obligation by the district court to actually exercise that discretion. And what happened here is that the district court didn't exercise that discretion. And at that point, I think it is appropriate for this court to say, we looked at this. We previewed that we thought the case was actually a frivolous one. We think it is appropriate to award fees here. And we send it back to the court. How can you say that the court didn't exercise discretion? I mean, it's got an opinion. It adopted verbatim the findings of the magistrate court. He kind of walked through everything that has happened with Judge Davis. I mean, that seems to me to get past the level of whether he exercised discretion or not. Well, Your Honor, I think here's the problem. Judge Davis's opinion was decided under a now defunct legal rule that this court has acknowledged was significantly harder to meet and had a significantly higher burden of proof. Judge Gilstrap did not say, let me reconsider the facts under the new lower standard of proof and the lower burden. He simply said, Judge Davis found these 11 things. I block quote them and put them in. And then he said in a single line, I've considered the totality of the circumstances and I don't need to change it. I would note, Your Honor, also that in responding to this court's order, what he said was that he thought it would be inappropriate to quote circumvent, by hindsight, the judgments and in-person evaluations that the trial judge who dealt with this case in the court arena was best positioned to have. But he did that, didn't he? I mean, didn't he accept the supplemental declaration and relied on it? Well, no, Your Honor. They submitted a supplemental declaration. Indeed, most of their argument on appeal is a new argument in that supplemental declaration. He didn't actually accept it. And indeed, what he said when it was presented in open court was that he would, quote, not reopen the record, unquote. So I think the only fair inference of that is that he didn't consider that supplemental evidence at all. That's in the record at A4326. It seemed to me he considered it. He just didn't incorporate it into his decision. It's hard to know, Your Honor, precisely because his decision has very little other than the copying of Judge Davis' findings. How do we view that circumstance? I mean, so let's just, for argument's sake, let's say that we're of the opinion that the arguments up to this point in time, up to the point in time of summary judgment, were frivolous. And then after it comes up to us, goes back, and at that point in time, there's another declaration that's followed. And you were just forced to respond to that, correct? Yes. Yes, Your Honor. Yeah, so I think, well, I think two things. One is that the relevant question of frivolousness in the underlying case is what were the arguments they made and did they have any merit. Coming up with a new argument after the first fees appeal on remand shouldn't be able to help them escape the frivolousness of the original argument. I'm not saying that it helps them. I'm just saying would it add to the depth of frivolous, a new argument that's being made? I'd like that answer from your opponent as well. Yes, Your Honor. I think it does. This court has made clear in the past that one of the things that can constitute a basis for an award of fees is making arguments that are a, quote, constantly moving target. And I think that's a fair characterization of what happened here where the appeal brief, in this case, cites this new declaration 50 times and does not cite the original declaration with the original arguments even once. And I take it that they have abandoned the argument that we contend is frivolous, which is that the ball and socket camera could only overturn in one direction. So I think it would, in fact, be appropriate to consider that as a factor that supports a finding that this case is exceptional. And it adds together the totality of the circumstances with the frivolousness of the infringement finding, with the frivolousness of the invalidity arguments, and with the litigation strategy, the fact that they weren't actually ever interested in litigating the merits of this case. They were interested in nuisance value settlements. If Your Honor has no more further questions, I'm happy to respond. I've had a couple of cases from the court in the Eastern District, and they seem to put a lot of value on the extent to which the cases or lawsuits represent a nuisance value situation. But the Supreme Court doesn't clearly address that particular factor. So that's correct, Your Honor. The Supreme Court doesn't explicitly address that, although it does make clear, I think, both that the way in which you litigate and the substantive merits can themselves be the basis for a finding. But the way you litigate, isn't that more to vexatious litigation? I mean, is it? Well, I think certainly it can be and often is. But it is worth noting that the Supreme Court in Conwell v. Cisco went out of its way to identify a business model of nuisance value settlements and then said district courts have the authority and responsibility to ensure frivolous cases are dissuaded in those cases by applying Section 285. So I think the Supreme Court has, in fact, firmly in mind the idea that this can be an inappropriate litigation strategy. So does this court. In FFA systems, it said the repeated filing of patent infringement actions for the sole purpose of forcing settlements with no intention of testing the merits of one's claims is relevant to a district court's exceptional case determination. And in E.O.N. Net, where the settlements were of comparable value to the ones here, and the district court referred to those as having indicia of extortion, this court noted that the problem with those settlements is precisely that there's no incentive for a party to actually litigate the merits, even of a frivolous claim to judgment, because they can get away for a nuisance value settlement. I'll reserve the rest of my time for Revo. Okay. Thank you, Rob. Mr. Ammons. Thank you, Your Honor. The starting point, there was a mention of abuse discretion standard. That's certainly the standard, and the district court is certainly entitled to proper deference on that standard. There is not a mention of the clear error standard, which is also. That's a really hard standard. It's a high level as a matter. And, Mike, the concern I have is that it could be that we may never find an exceptional case under that standard, that being so high. So I'm looking at this case to see if there's any point where this court could say that there's been an abuse of discretion. This is why I asked the question. And I gave your opponent the opportunity to address that issue, and I'd like for you to defend the court on that point. It's hard to see without there being clear error in the factual findings how there could be abuse of discretion, given the wide discretion of the Octane Court. But your opponent is saying that the court didn't even exercise any discretion. Well, that's just an incorrect spin on Judge Gilstrap's order. Judge Gilstrap's order starts by saying that the facts haven't changed. And so he goes on and recites the facts. The statement that Judge Gilstrap cut and pasted the facts is not correct. So when he says that the facts haven't changed, in a way he's also saying, therefore, the arguments remain the same. No, I don't think so. The reason I'm saying that is because there was something else that happened, and that's the following of the supplemental declaration and the attempt to have that weigh in. Well, on the issue of infringement, in the proceedings, the first proceedings, most of the support for the briefing came from the deposition of the plaintiff's expert. And depositions are necessarily muddy, and it was cleaner to put that into a declaration. So the infringement position, there's been no retrenchment from the infringement position that was in the initial briefing. So that's not a factor. That's just not correct. The main things that were added were additional examples for the court to consider. The example of the earth spinning on its axis, that's rotation. The wrist example, I'm sorry, the elbow example, how that's a compound joint. The two independent movements. There was discussion of how the theory. So there was supplemental argument. There was argument, but not inconclusive. So when I'm looking at this and I'm viewing that, litigation stopped right before summary judgment. Apparently there was a decision made, let's dismiss this for prejudice. Litigation comes to a halt right before summary judgment, and then suddenly it continues again on remand. Well, it's not right before summary judgment. That was in the statement there. So the way that works is letter briefs are filed. The court can decide whether to allow briefing on summary judgment or not. There was no decision to allow briefing. The facts are that. Well, it was after discovery, after you proffered and responded to experts, and you were headed towards a summary judgment. That was next. I don't know in terms of time how far away it was, but that was the next step. Well, the next step, the court didn't need to entertain summary judgment. It's not required to. That's why the letter brief procedure is there. The next step was trial. And there are declarations that are in the record of why Newegg was dropped. Newegg was dropped because its suppliers had settled out. Ten of its suppliers had settled out. Its last two suppliers, HP and Gearhead, had settled out. And at that point, the damages against Gearhead were small. They were less than one-tenth of the damages against its co-defendant, Sakhar. Sakhar had been riding Newegg's coattails for the entire case, and Sakhar had no damages expert to challenge the damages theories of the plaintiff. Newegg had a damages expert. Sakhar did not. So there were legitimate reasons, strategic reasons, unrelated to the merits of the case of why Newegg was dropped. And those are reasonable reasons that plaintiffs encounter in litigation. But it had nothing to do with summary judgment. It had nothing to do with the merits of the case. It was a small amount of damages and another defendant who was ill-prepared for trial and who the plaintiff had a very good chance of failing. If the other parties, the ones that you mentioned, had not dropped out or they had refused to settle, would the case go on to trial from your perspective? If Newegg's suppliers had stayed in the case, then, yes, there's no reason. Ultimately, the claims were canceled in re-examination before we got there. So that's the way the case ended. But the strategic decision was the supplier's route. And it's in the record as well. Other defendants who had not filed summary judgment briefing would last to the trial. That strategic decision seems to feed into Judge Davis's view of whether these were nuisance cases or not, nuisance value cases. Well, other than just rhetoric by Newegg, the evidence is overwhelming that there was a reasonable basis for the settlement numbers in this case. And that was a metric of $1.25 to $1.50 per webcam. It was established prior to the case. The largest licensee ended up paying over $3.7 million in unit royalties. It's just that some of these defendants had very, very small unit royalties. And so there was a licensing put in place. And the evidence is uncontested. And there's sworn evidence to support it that the benchmark for negotiations was this royalty benchmark. These defendants had small sales. And so they had a capped rate. Some of them had it to where if they exceeded that, then they'd pay an additional unit of royalty. Some were likely to receive the cap. But the reasonableness of all this presumes that you had a reasonable claim of infringement. And post-claim construction, how can you possibly show any reasonable claim of infringement? Well, so, I mean, the reasonableness of the settlement, I'll just speak to your question because I think it's a more important question. But I don't think it presupposes that every settlement, they're flawed because the amounts were small. There was an explanation for the amounts of the small sales. As far as the... Sure. I don't understand how we would overturn that kind of fact-finding on an abuse of discretion standard. But it seems to me that what's the problem here is that post-claim construction, and this was part of the last appeal, there is no reasonable basis for an infringement claim. And we didn't make that finding because we ordered the court to look at it all again under the new standards, under Octane. And the court didn't do that. It said, I'm just wholesale adopting these factual findings, and I'm not going to change the outcome. Well, respectfully, we disagree. That isn't what the court said that it did. And I'd also disagree that it wholesale adopted them. If you look at finding one, it left off the first half of the finding, which knew it had complained about, which tells me that the court was well aware of these facts and was trying to get it right. I take the court's opinion at face value that he did carefully consider... So do you think the court looked at this post-claim construction issue and said, I think that there's still a reasonable claim for infringement? Absolutely. Where in that opinion does it show that he actually addressed that? Well, it says after careful review of the entirety of the record, as well as the parties... So there's no explicit discussion? I take the court at its word that it carefully reviewed the record and came up with the opinion, and the facts are the same. So... I find it very hard to think that he actually explicitly thought about that post-claim construction issue that was at the heart of the appeal the last time around, with that one-line throwaway sentence. The court, particularly when the tenor of this opinion is, I'm not changing Judge Davis's result because he saw this case. Well... And we explicitly told the court to set that aside and look at it anew again. To me, that seems to be a violation of our mandate, which is an abuse of discretion. Well, respectfully, we disagree. I mean, even if Judge Gilstrap had gone back and said, I think that the plaintiff was unreasonable. He said the plaintiff could reasonably argue the products meet the limitation. If he said they're unreasonable within his discretion, he could still find it not to be an exceptional case, and that would be... Well, certainly, that's why I think I'm a little dismayed by this whole thing, because he didn't do it right the first time. But if we send it back, he's probably going to go back and deny fees again, and it's all going to be a big waste of time. He'll be up here again, you'll be up here again, and it won't be under an abuse of discretion. But, I mean, it really seems that what he did here was pay lip service to our mandate, and it's very frustrating. Well, the court had a lengthy hearing on this. He allowed the parties to be heard. He allowed the parties to be briefed. It took him a considerable amount of time to rule on this. I just take it at face value that he did exactly what he said, but that the facts that he thought that Judge Davis had adequately stated them, except for the correction that he made, the revision that he made, and that there was no better way to state them, and he did that. So we just see that as differently. Let me ask you just one more time. Suppose we find it was clear error to rely on a fact finding that there was a reasonable infringement position after claim construction. So there's clear error in that fact finding. Then we still, do we send it back because he relied on clear error, and that that's an abuse of discretion? Well, you're saying, because he said one could reasonably argue it. So you're saying it's clear error that one could reasonably argue? That there was infringement post-claim construction, yes. I would say that if you look at the conclusion of the court, Judge Duquesne's infringement arguments, they were not so weak, or his conduct so poor to make the case stand out from the others. Did he base that on a pre-claim construction and a post-claim construction position? Or just overall? It doesn't say, does it? Well, it says, you could reasonably argue the defendant's products meet the, quote, rotatably attached, unquote, limitation. So at a minimum, he can tip it post-claim construction. I mean, in the hearing on this matter, all this was here. There's another part in our remand order where we say that Neuig defendant's arguments, and this is now quotes, had significant merit, particularly the argument that adjusted camps continued pursuit of his infringement claims after the district court construed the claim term rotably attached was baseless. I think the language was appears to him, but I thought he read it correctly. But Judge Gilstrap was aware of that. He asked the parties their views on the import of that. He mentions it in his order to show he was aware of it. He is the trial judge, and it's the trial judge's province and discretion under Octane. He took into consideration what this court had said, and he came to his conclusion as the trial judge. That's what Octane allows, and that's just not an abuse of discretion. Again, had Judge Gilstrap come up with different factual findings, it would still be within his discretion to say it's not an exceptional case. Most of Neuig, we've just focused on the infringement issue. Neuig's other arguments have all been debunked. Judge Davis debunked them. Judge Gilstrap agreed they were debunked, and it comes down to the infringement issue. And with the infringement issue, there is a reasonable basis to say that this restricted joint has two independent movements, and that one of ordinary skill and art could see that as rotating about a single axis at a certain vector or at a certain tilt angle. And we respectfully submit that's a reasonable position, or a minimum, that it was within the province of the trial judge who considered these matters fully. If we were to find in favor of Neuberg, what would be the appropriate thing to do? To reverse? No, the only thing the court could do would be to remand it again for more findings. We remanded once, and we said, I thought we had clear instruction there that this case was acceptable, and we're going to wait to see what the Supreme Court says. Your interpretation of your order would be yours, but the order seemed to say it needs to be reweighed under octane because it had been weighed under the Brooks Furniture Standard. It didn't say that there was clear error. I might remind the court that Neuberg didn't claim clear error on appeal, and we've also pointed out that under the waiver rule and the mandate rule that it is too late for them to claim clear error. So the court reweighed the facts as this court told it to, and under octane it came to the same conclusion that it wasn't an exceptional case, which is exactly what this court asked it to do. So, again, I want to make sure the courts understand as far as the new evidence that was submitted, the fundamental infringement theory has not changed. It's fundamentally sound or at a minimum fundamentally reasonable, and the things that were added were pointing out other things. For example, that Neuegg's invalidity contentions had made a similar argument where the camera was rotating about two axes and it claimed that that was invalidating the claim element and that Neuegg's expert report had the W reference, that was the Ma reference, Neuegg's expert report had the W reference, which had a ball joint and which Neuegg said was anticipatory. Am I correct that Judge Gilstrap does not address the supplemental declaration in his ruling? He says he considered all of the filings, I believe, and that was one of the filings. But he doesn't single it out? He does not single it out individually, no. Nor does he necessarily need to evaluate the infringement position. Aside from the merits, I'm just wondering if you have a frivolous case up to the point of, after claim construction, up to the point of summary judgment, then you have additional, whether this is a continuation of a frivolous case. That's what I'm looking at. No, I think you address, he addressed it from the perspective of is the case exceptional or not? Would you look at the totality of the circumstances, which is the entirety of the case? Yeah, it seems like it was pretty significant. It seems like to me that he not addressing this particular declaration, he missed it, didn't consider it? No, he had already, from his assessment of the facts, the fundamental facts, the facts at issue, had not changed. So it wasn't necessary for him to further point out or consider the fact that they had invalidity theories that were similar to the infringement theory that they were now criticizing as frivolous. He already concluded that the infringement, it was reasonable to assert infringement and it wasn't necessary to address those additional things. Again, the fundamental infringement position and the argument they're making that our invalidity positions were frivolous as well, those were all addressed in the original proceedings and those fundamental facts did not change. That's why he didn't need to rewrite any factual findings, although I will point out he did rewrite factual finding number one because Newegg had complained about that and he rewrote it to address it, which shows that it wasn't just a cut and paste, that he had done his, that he had fulfilled his duties in terms of exactly what his order says, is that he carefully considered everything. Okay, we have your argument. Thank you. Mr. Lemley, you left time on the table. You have about 20 extra seconds, but, you know, well, how about 30 minutes? You get to 30 minutes. Very well, Your Honor. A couple of points. First, as to this idea that we somehow waived the ability to challenge the facts, that's simply wrong for two reasons. First is Judge Davis' opinion was vacated. It is of no force in effect. There are findings here and we are entitled to challenge them. In any event, we did appeal Judge Davis' original findings and that's in the record at 838-32, 38-33, 38-45 to 46, and 38-48. A learned colleague suggests that all of our other arguments on the merits have been debunked. That's simply not true. The validity argument not only wasn't debunked, it won. The patent claim we are talking about has been invalidated in the Patent Office because the very argument that we made on validity, the Ierofuni argument, won in the Patent Office and they abandoned the claim. And that argument was never addressed by Judge Davis or Judge Gilstraut. I think it's an independent basis for a finding of frivolousness that there's no finding whatsoever that the invalidity arguments they made were reasonable either by Judge Davis or by Judge Gilstraut. The claim that the suppliers settled out and they dropped us because there wasn't any money, they do make that claim in their red brief at 58, but you'll notice they don't cite in the record citation, and there's a reason for that. That's because it isn't true. Newegg's house brand Rosewill, not any third-party brands, made up the lion's share of the profits shown in A1362-63, so settling out of suppliers wouldn't have affected that. Most of the rest of the webcams that weren't Rosewill cams that were still being accused were made by Hercules and IMC, neither of which AdjustaCam claims to have licensed. And indeed, the claim licenses to HP and Yearhead as of the time of June 25, 2012, made up only 210 out of 40,815 accused sales. That's in the record at A620. So this idea that they somehow dropped us because we were licensed I think is simply untrue. And finally, I want to return to what this court should do and what happens next. Judge Gostrap said that he was not going to follow this court's indication that the case had significant merit because he didn't want to, quote, circumvent by hindsight what Judge Davis had done. We respectfully suggest that circumventing by hindsight is precisely what has to be done when the legal standard changes, when the burden of proof changes, and his refusal to do that was clearly erroneous. We do not think that this court has to remand for another determination or failure to determine the facts. We think there's plenty of evidence that would allow this court to reach the conclusion that this case was exceptional. But I suggest that if you do choose to remand for the merits, that as much specific guidance as to specific findings of frivolousness and litigation conduct as possible would be appropriate. This case in Oplus v. Vizio remanded while saying, quote, we have reviewed the record and cannot find a basis to support the district court's refusal to award fees, unquote. That would be appropriate here. Thank you. Thank you very much. That's the conclusion of our evidence today. This court is now recessed.